## ESCROW AGREEMENT

THIS ESCROW AGREEMENT (this "Agreement") is made and entered as of this 7th day of September, 2018 by and among **VINTRO HOTELS & RESORTS OHIO LLC**, an Ohio limited liability company ("Borrower"), **SINMIER, LLC**, a Michigan limited liability company ("Lender"), and **MERCANTILE TITLE AGENCY, INC.**, an Ohio corporation ("Agent").

### RECITALS:

A. Pursuant to the terms of that certain Loan Agreement of even date herewith, by and between Lender and Borrower (as amended, modified, supplemented, extended, renewed or replaced from time to time, the "Loan Agreement"), Lender has agreed to extend to Borrower a loan in the principal amount of $7,000,000.00 (the "Loan"). The Loan is evidenced by that certain Promissory Note of even date herewith made by Borrower and payable to the order of Lender (as the same may be amended, modified, supplemented, extended, renewed, restated or replaced from time to time, the "Note").

B. The Loan and Borrower's obligations under the Loan Agreement and the Note are secured by, among other things, that certain Open-End Mortgage and Security Agreement (the "Security Instrument") made by Borrower for the benefit of Lender, encumbering certain land and improvements constructed thereon (or to be constructed thereon) and other property more particularly described in the Security Instrument (collectively the land, improvements and such other property are referred to herein and in the Security Instrument as the "Security Property"), such land being more particularly described in Exhibit A attached to the Security Instrument.

C. Lender requires as a condition to the making of the Loan that Borrower enter into this Agreement and deposit certain funds with Agent as provided in this Agreement as additional security for all of Borrower's obligations under the Note, the Loan Agreement, the Security Instrument and the other Loan Documents.

D. Borrower acknowledges and agrees that this Agreement and the covenants of Borrower hereunder are an integral part of Lender's security for the Loan and that Lender would not have made the Loan in the absence of this Agreement and Borrower's covenants hereunder. Unless otherwise herein defined, all initially capitalized terms shall have the meanings given to such terms in the Loan Agreement.

NOW THEREFORE, for and in consideration of good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and the mutual agreements hereinafter set forth, Borrower, Lender and Agent hereby agree as follows:

1. <u>Delivery and Investment of Deposit</u>.

    (a) Concurrently with the execution of this Agreement, Borrower shall initially deposit with Agent the sum of $2,000,000.00. Such amount, together with any amounts deposited pursuant to Section 3(a) hereof and other funds held by Agent pursuant to this Agreement, is collectively referred to herein as the "Deposit".

    (b) Borrower has requested Agent to accept and hold the Deposit upon the terms and conditions set forth in this Agreement. Pursuant to the request of Borrower, Agent shall receive and accept the Deposit upon and subject to the remaining terms and conditions hereof.

    (c) Agent shall maintain the Deposit with and all other funds held by it pursuant to this Agreement in a non-interest bearing account at a reputable regional or national bank, which is insured by the Federal Deposit Insurance Corporation. Borrower shall bear all risk of loss of the Deposit from any cause whatsoever, including any loss caused by investment of the Deposit under this Agreement, excepting, however any loss of principal due to the gross negligence or willful misconduct of Agent. The Deposit will be maintained in a non-interest bearing account and there will be no rate of return or benefit accruing to the Deposit or any other funds held by Agent under this Agreement.

2. <u>Security Interest in Deposit</u>.

1

13168626

  (a) Borrower is and shall continue to be the owner of the Deposit, but such ownership is strictly subject to the terms and conditions of this Agreement. Borrower hereby grants to Lender and to Agent, as collateral agent for Lender, a first priority lien and security interest in and to the Deposit as security for payment of all indebtedness and sums due under the Loan Documents and the observance by Borrower of the obligations of Borrower under the Loan Documents and this Agreement. The parties hereto agree that this Agreement constitutes a security agreement under the Uniform Commercial Code as enacted in the State of Ohio, and that Borrower shall execute and deliver to Lender such financing statements and other documents as Lender shall deem reasonably necessary or desirable to perfect Lender's interest in the Deposit.

  (b) Borrower hereby releases all power of dominion and control over the Deposit and acknowledges that it shall not have access to the Deposit except as specifically provided in this Agreement.

  3. <u>Disbursement of Deposit</u>.

  (a) Lender shall direct Agent to make disbursements from the Deposit to pay or reimburse Borrower only for the cost of capital improvements to the Property (the "Work") pursuant to plans and specifications approved by Lender in advance (the "Plans and Specifications"), which approval shall not be unreasonably withheld. Once approved by Lender, the Plans and Specifications shall not be modified by Borrower without the prior written consent of Lender, which consent shall not be unreasonably withheld.

  (b) Lender shall, upon written request from Borrower and satisfaction of the requirements set forth in this Agreement, instruct Agent to disburse to Borrower amounts from the Deposit necessary to reimburse Borrower for the actual approved costs of the Work, upon completion of such Work, as reasonably determined by Lender. In no event shall Lender be obligated to authorize Agent to disburse funds from the Deposit if (i) an Event of Default has occurred and is continuing; (ii) there is an act, event or condition then existing that, with the giving of notice or passage of time, or both, would constitute an Event of Default; or (iii) the In-Balance Requirement (as defined in Section 4(a) below) is not satisfied.

  (c) Lender, at its option, may authorize Agent to issue joint checks payable to Borrower and the supplier, materialman, mechanic, subcontractor or other party to whom payment is due for the performance of the Work. In the case of all payments made by joint check, Lender shall require an unconditional waiver of liens from each contractor receiving payment prior to Lender's disbursement of any further disbursement from the Deposit.

  (d) NOTWITHSTANDING ANYTHING CONTAINED HEREIN OR IN ANY OTHER LOAN DOCUMENT TO THE CONTRARY, LENDER SHALL NOT BE OBLIGATED TO AUTHORIZE RELEASE OF ANY PORTION OF THE DEPOSIT UNTIL THE FOLLOWING HAVE BEEN SATISFIED IN FULL:

   (i) THE POST-CLOSING SURVEY OBLIGATIONS (AS DEFINED IN SECTION 4.12 OF THE LOAN AGREEMENT); AND

   (ii) BORROWER AND A LENDER PARTY HAVE EXECUTED AN OPTION AGREEMENT THAT GRANTS SUCH LENDER PARTY THE OPTION TO CONVERT THE OUTSTANDING BALANCE OF THE LOAN INTO EITHER (X) AN EQUITY INTEREST IN BORROWER OR (Y) IN INTEREST IN THE PROPERTY AS A TENANCY-IN-COMMON WITH BORROWER, UPON TERMS AND CONDITIONS ACCEPTABLE TO THE PARTIES IN THEIR COMMERCIALLY REASONABLE DISCRETION. AS USED HEREIN, "LENDER PARTY" SHALL MEAN LENDER, A PRINCIPAL OF LENDER, OR AN AFFILIATE OF LENDER.

  4. <u>Completion of the Work.</u>

  (a) Borrower shall not commence any Work at the Property until Plans and Specifications have been approved for such Work pursuant to Section 3(a) above. It is expressly understood and agreed that the

balance of the Deposit shall at all times be sufficient to complete the Work in accordance with all Plans and Specifications approved by Lender, as determined by Lender in its reasonable discretion (the "In-Balance Requirement"). If for any reason the Deposit is insufficient to satisfy the In-Balance Requirement, then, within five (5) days of Lender's written request, Borrower shall deposit with Agent funds sufficient to satisfy the amount of such insufficiency, which amount shall constitute a part of the Deposit. Lender makes no warranty, either express or implied, that the Deposit will be sufficient to complete all such Work.

(b) All Work shall be undertaken by Borrower at its sole cost and expense. Once commenced, Borrower shall promptly and diligently complete the Work.

(c) All Work shall be completed in a good and workmanlike manner and in compliance with all applicable laws, regulations and permits and other legal requirements. Borrower shall use only contractors who are properly licensed, who carry workers' compensation insurance and appropriate liability insurance and who generally have a good reputation for completing their work in a neat, prompt and workmanlike manner.

(d) Borrower shall complete all Work, and install all materials used in connection with the Work, free and clear of all mechanic's, materialman's or other liens related to or arising therefrom. The insufficiency of any balance in the Deposit shall not relieve Borrower from its obligation to complete all Work in accordance with the requirements of this Agreement and to pay all costs in connection therewith.

(e) In addition to any insurance required under the Loan Agreement, Borrower shall provide or cause to be provided workmen's compensation insurance, builder's risk, and public liability insurance and other insurance to the extent required under applicable law in connection with the Work. All such policies shall be in form and amount reasonably satisfactory to Lender. All such policies which can be endorsed with standard mortgagee clauses making loss payable to Lender or its assigns shall be so endorsed. Certified copies of such policies shall be delivered to Lender upon request.

(f) Borrower shall upon request deliver to Lender such, invoices, records, papers and documents relating to the Property and the Work as Lender may reasonably require from time to time confirm Borrower's compliance with the requirements of this Agreement.

5. Request for Disbursement.

(a) Each request for disbursement from the Deposit shall be submitted on the Request for Disbursement form attached hereto as Exhibit A, which shall specify, among other things:

(i) the amount requested and the purpose for which the disbursement is requested;

(ii) the price of all materials (grouped by type or category) used for the Work; and

(iii) the cost of all contracted labor or other services applicable for such request for disbursement is made.

(b) With each request for disbursement, Borrower shall provide the following:

(i) copies of invoices for all items or materials purchased and all contracted labor or services provided along with evidence satisfactory to Lender of payment of all such amounts;

(ii) evidence of completion of the Work, satisfactory to Lender in its reasonable judgment;

(iii) a report of an inspecting architect (or an alternative inspection satisfactory to Lender in its sole discretion), which shall be at Borrower's sole cost,

(iv) unconditional lien waivers from each contractor to whom payment is to be made conforming to the requirements of applicable law and shall cover all work performed and materials supplied (including equipment and fixtures) for the Property by that contractor, supplier, subcontractor, mechanic or materialman through the date covered by the current reimbursement request;

(v) a title search issued by a title company disclosing no new liens or other items of record and if requested, an endorsement to Lender's title insurance policy disclosing no new liens of record;

(vi) any such additional information as Lender may reasonably request.

Notwithstanding anything to the contrary in this Agreement, Lender may, in its sole discretion, waive any of the requirements set forth in this Section.

6. <u>Inspections</u>. Borrower shall permit Lender and Lender's agents and representatives to enter onto the Property during normal business hours to inspect the progress of the Work and all materials being used in connection therewith and to examine all plans and shop drawings relating to such Work which are or may be kept at the Property. Borrower shall cause all contractors and subcontractors to cooperate with Lender or Lender's representatives in connection with any such inspection.

7. <u>Events of Default and Remedies</u>.

(a) As used herein "<u>Event of Default</u>" shall mean (i) Borrower's breach of any provision of this Agreement or (ii) the occurrence of an Event of Default as such term is defined in the Loan Agreement. Upon the occurrence of an Event of Default, and without notice to Borrower, Lender may require Agent to deliver the Deposit to Lender and Lender may terminate this Agreement and retain the Deposit then being held pursuant to this Agreement and apply such Deposit in such order and in such amounts as Lender shall elect, in its sole and absolute discretion: (a) to payment of the indebtedness evidenced by the Loan Documents, and/or (b) in order to proceed under existing contracts or enter into contracts with third parties to perform and complete the Work. Lender shall have the right to enter onto the Property and perform any and all work and labor necessary to perform and complete the Work and/or employ watchmen to protect the Property from damage. All sums so expended by Lender shall be construed to have been paid to Borrower, shall become a part of the debt and shall be secured by the Security Instrument. Borrower hereby constitutes and appoints Lender its true and lawful attorney-in-fact with full power of substitution to complete or undertake the Work in the name of the Borrower. This power of attorney shall be construed to be a power coupled with an interest which cannot be revoked. Upon the occurrence of an Event of Default, Borrower hereby authorizes Lender, and Lender shall have full right and authority, (i) to ask, demand, collect, receive, receipt for, sue for, compound and give acquittance for the Deposit, (ii) to execute any and all withdrawal receipts or other orders for the payment of money drawn on the Deposit, (iii) to endorse the name of Borrower on all commercial paper or other instruments given in payment or in part payment thereof, and (iv) in the discretion of Lender, to file any claim or take any other action or proceeding, either in Borrower's name or in its own name, which Lender may reasonably deem necessary or appropriate to protect and preserve the rights of Lender hereunder. Agent shall be entitled to rely on Lender's statement in writing that a default has occurred and shall, upon Lender's request after the receipt of such a statement, turn the Deposit so requested over to Lender without any right to investigate the actual occurrence or non-occurrence of an Event of Default and the expiration of any applicable cure period.

(b) Upon the occurrence of an Event of Default, Lender may reduce its claim to judgment or foreclose or otherwise enforce, in whole or in part, the security interest created hereby by any available judicial procedure.

(c) Upon the occurrence of an Event of Default, Lender may at any time cause any or all of the Deposit to be transferred into its name or into the name or names of any nominee or nominees of Lender.

(d) All remedies herein expressly provided for are cumulative of any and all other remedies existing at law or in equity and are cumulative of any and all other remedies provided for in any other instrument securing the payment of the secured indebtedness, or any part thereof, or otherwise benefiting Lender. Upon the

4

13168626

occurrence of an Event of Default, Lender shall, in addition to the remedies herein provided, be entitled to exercise any and all rights and remedies reserved to Lender in the other Loan Documents and shall also be entitled to avail itself of all such other remedies as may now or hereafter exist at law or in equity for the collection of the secured indebtedness and the enforcement of the covenants herein, and the resort to any remedy provided for hereunder or under any such other instrument or provided for by law shall not prevent the concurrent or subsequent employment of any other appropriate remedy or remedies.

(e) Lender may resort to any security given by this Agreement or to any other security now existing or hereafter given to secure the payment of the secured indebtedness, in whole or in part, and in such portions and in such order as may seem best to Lender in its sole and uncontrolled discretion, and any such action shall not in anyway be considered as a waiver of any of the rights, benefits or security interests evidenced by this Agreement.

8. <u>Lender Obligations</u>.

(a) Lender shall not in any way be responsible for the failure to do any or all of the things for which rights, interest, powers and authorities are herein granted. Lender shall be responsible only for the application of such cash, documents or other property as it actually receives under the terms hereof; provided, however, that the failure of Lender to do any of the things or exercise any of the rights, interests, powers and authorities hereunder shall not be construed to be a waiver of any such rights, interests, powers and authorities.

(b) Nothing contained in this Agreement shall constitute Lender or Agent as a joint venturer, partner or agent of Borrower, or render Lender or Agent (i) responsible for making or completing any Work; (ii) require Lender to expend funds in addition to the Deposit to make or complete the Work; (iii) obligate Lender to proceed with the Work; or (iv) obligate Lender to demand from Borrower additional sums to make or complete any of the Work.

(c) Nothing contained in this Agreement shall be deemed or construed to create an obligation on the part of Lender or Agent to any third party, nor shall any third party have a right to enforce against Lender or Agent any right that Borrower may have under this Agreement.

(d) Lender's approval of plans for Work, authorization of release of funds from the Deposit, inspection of the Property by Lender or Lender's agents, or other acknowledgment of completion of the Work in a manner satisfactory to Lender shall not be deemed an acknowledgment or warranty to any person that such Work is fit for any purpose or that the Work has been completed in accordance with applicable laws.

(e) The failure of Lender to release and return to Borrower the Deposit shall not relieve the Borrower from its obligations to fulfill (i) all covenants in the Note, the Loan Agreement, the Security Instrument, and the other Loan Documents, or (ii) any covenants or agreements under any leases at the Property.

9. <u>Agent</u>.

(a) Agent joins in the execution of this Agreement for the express purposes of agreeing to be bound by the provisions of this Agreement with respect to the administration and disbursement of the Deposit. Lender and Borrower hereby authorize the delivery of the Deposit to Agent and the subsequent disbursement of the Deposit by Agent in accordance with the terms and provisions of this Agreement. Agent shall have the right, without further inquiry, to rely upon and act or refrain from acting in accordance with any written instruction from Lender (including but not limited to electronically confirmed facsimiles of such notice) reasonably believed by Agent to be genuine and to have been signed or presented by a duly authorized person acting on behalf of Lender.

(b) Agent shall hold the Deposit as the property of Borrower, but solely and exclusively as agent and pledgee on behalf of Lender as secured party with respect to the security interest granted by the Borrower to Lender in the Deposit.

5

13168626

(c) Agent shall be liable only to maintain the Deposit and, upon express written instruction from the Lender, to make such disbursements as are expressly provided for under the terms of this Agreement. Agent shall not be chargeable with knowledge, and has no duties with respect to, any other agreements between Borrower and Lender, including without limitation, the Loan Documents. By acceptance of this Agreement, Agent is acting in the capacity of a depository only, and shall not be liable or responsible to Borrower for damages, losses or expenses unless the same shall be caused by the gross negligence or willful misconduct of Agent.

(d) Lender and Borrower acknowledge and agree that: (i) Agent makes no representations or warranties, express or implied, concerning the validity, effectiveness, perfection or priority of Lender's security interest in the Deposit; and (ii) this Agreement applies only to the Deposit referenced herein, but not to any other deposit account which Agent may now or hereafter maintain.

(e) Neither Lender nor Agent shall incur any costs or expenses whatsoever in connection with this Agreement or the Deposit or the administration thereof. All such costs and expenses shall be borne and paid by Borrower.

10. <u>Indemnity</u>. Borrower shall indemnify Lender and Agent and hold each of them harmless from and against any and all actions, suits, claims, demands, liabilities, losses, damages, obligations and costs and expenses (including litigation costs and reasonable attorneys' fees and expenses) arising from or in any way connected with the holding or investment of the Deposit. Furthermore, Borrower agrees to release, and hold harmless Lender and Agent and their respective directors, officers, employees, attorneys, successors and assigns, from and against any and all loss, liability, cost, damage and expense incurred by Borrower or Lender, including without limitation, legal and accounting fees and expenses, arising in any manner whatsoever out of their actions taken in accordance with the provisions of this Agreement, unless such party acts with gross negligence or engages in willful misconduct. The provisions of this paragraph shall survive the termination of this Agreement.

11. <u>Notices</u>. All notices, requests, demands, authorizations or other written instruments required or permitted hereunder, shall be in writing, signed by the party giving or making the same, and shall be sent hand-delivered, effective upon receipt, sent by United States Express Mail or by a nationally recognized overnight courier, effective upon receipt, or sent by United States registered or certified mail, postage prepaid, with return receipt requested, deemed effective on the earlier of the day of actual delivery as shown by the addressee's return receipt or the expiration of three (3) business days after the date of mailing, addressed to the party intended to receive the same at the address set forth below:

> To Borrower: VINTRO HOTELS & RESORTS OHIO LLC
> 5513 Milan Road
> Sandusky, OH 44870
> Attention: Indergit Grewal
>
> To Lender: SINMIER, LLC
> 30201 Orchard Lake Rd. #120
> Farmington Hills, MI 48334
> Attention: Pargat Grewal
>
> With a copy to:
>
> Matta Blair, PLC
> 39572 Woodward Avenue, Suite 200
> Bloomfield Hills, MI 48304
> Attention: Kellie M. Blair, Esq.
>
> and
>
> Dinsmore & Shohl LLP
> 255 East Fifth Street, Suite 1900

13168626

            Cincinnati, OH 45202
            Attention: Tony J. Bickel, Esq.

To Agent:      Mercantile Title Agency, Inc.
          255 East Fifth Street, Suite 1900
          Cincinnati, Ohio 45202
          Attention: Brian Groemminger

Such addresses may be changed from time to time by any party serving notice as above provided.

12. **Miscellaneous**.

(a) This Agreement shall be irrevocable, and Borrower hereby waives all rights and powers to alter, amend, revoke or terminate this Agreement. This Agreement shall terminate the Deposit has been fully disbursed in accordance with the terms hereof.

(b) To the extent that the terms and conditions of this Agreement are inconsistent with or conflict with the Loan Agreement, this Agreement shall control.

(c) Borrower may not assign, pledge or otherwise transfer or encumber this Agreement or any right hereunder separate and apart from the Loan Documents. This Agreement shall be binding upon and inure to the benefit of the successors and permitted assigns of Borrower, Lender and Agent.

(d) This Agreement embodies the entire agreement among Borrower, Lender and Agent relating to the subject matter hereof, and supersedes all prior agreements and understandings among Borrower, Lender and Agent relating to such subject matter. This Agreement may be changed, waived, or terminated only by an instrument in writing signed by the party against who enforcement of such change, waiver, or termination is sought.

(e) If any provision of this Agreement shall, for any reason, be held to be invalid, illegal, or unenforceable, such invalidity, illegality or unenforceability shall not affect any other provision hereof and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

(f) This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio and the laws of the United States applicable to transactions undertaken within the State of Ohio.

(g) This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which, when taken together, shall be deemed one and the same document.

**[SIGNATURE PAGES FOLLOW]**

*[Borrower's signature page to Escrow Agreement]*

IN WITNESS WHEREOF, Borrower has executed this Agreement in manner and form sufficient to bind them as of the day and year first above written.

**BORROWER:**

**VINTRO HOTELS & RESORTS OHIO LLC,**
an Ohio limited liability company

By: _____
Name: INDERJIT GREWAL
Title: MEMBER

STATE OF Washington :
: ss:
COUNTY OF King :

Sworn to and acknowledged before me, a Notary Public in and for said state, by Inderjit S. Grewal, the member of **VINTRO HOTELS & RESORTS OHIO LLC**, an Ohio limited liability company, for and on behalf of said limited liability company, this 22 day of August, 2018.

IN WITNESS WHEREOF, I have hereunder subscribed my name and affixed my notarial seal.

_____
Notary Public

[Notary Seal: MARIAH EBY, NOTARY PUBLIC, STATE OF WASHINGTON, COMMISSION EXPIRES 10-13-2021]

[SIGNATURES CONTINUE ON NEXT PAGE]

13168626

*[Lender's signature page to Escrow Agreement]*

IN WITNESS WHEREOF, Lender has executed this Agreement in manner and form sufficient to bind them as of the day and year first above written.

LENDER:

SINMIER, LLC,
a Michigan limited liability company

By: _____
Name: PARGAT S. GREWAL
Title: Manager

STATE OF _____

COUNTY OF _____:

RITA M. GILLAND
Notary Public, State of Michigan
County of Wayne
My Commission Expires 05-25-2019
Acting in the County of Oakland

Sworn to and acknowledged before me, a Notary Public in and for said state, by Pargat S. Grewal, the Manager of SINMIER, LLC, a Michigan limited liability company, for and on behalf of said limited liability company, this 24 day of August, 2018.

IN WITNESS WHEREOF, I have hereunder subscribed my name and affixed my notarial seal.

_____
Notary Public

[SIGNATURES CONTINUE ON NEXT PAGE]

13168626

*[Agent's signature page to Escrow Agreement]*

IN WITNESS WHEREOF, Agents has executed this Agreement in manner and form sufficient to bind them as of the day and year first above written.

**AGENT:**

**MERCANTILE TITLE AGENCY, INC.,**
an Ohio corporation

By: *Brian K Groemminger*
Name: Brian Groemminger
Title: Secretary

STATE OF OHIO :
: ss:
COUNTY OF Hamilton :

Sworn to and acknowledged before me, a Notary Public in and for said state, by Brian Groemminger, the Secretary of Mercantile Title Agency, Inc., an Ohio corporation, for and on behalf of said corporation, this 24th day of August, 2018.

IN WITNESS WHEREOF, I have hereunder subscribed my name and affixed my notarial seal.

Notary Public

JEAN ANN WANNINGER
Notary Public, State of Ohio
My Commission Expires
SEPTEMBER 5, 2019

13168626

## EXHIBIT A

Request for Disbursement

TO: **SINMIER, LLC**, a Michigan limited liability company ("Lender")

FROM: **VINTRO HOTELS & RESORTS OHIO LLC**, an Ohio limited liability company ("Borrower')

This Request for Disbursement (this "Request") is submitted by Borrower in accordance with the Escrow Agreement dated August ____, 2018, between Borrower, Lender and Agent (the "Agreement"). Terms used with initial capital letters and not defined in this Request for Disbursement have the meanings given them in the Agreement.

1. Borrower hereby requests reimbursement of the following commissions in the amounts, to the parties, specified below:

   <u>PAYEE</u>                                        <u>AMOUNT</u>

   [List separately]                                 $ _____

   TOTAL REIMBURSEMENT REQUESTED                     $ _____

2. Borrower certifies, represents and warrants to Lender that all statements, invoices, bills, costs, expenses and any other sums of money owing with respect to the above has been paid in full.

3. Borrower certifies, represents and warrants to Lender that: (a) the Work listed above has been fully completed; and (b) Borrower is entitled to a release of funds for the items and amounts requested in Section 1 above; (c) Borrower's representations and warranties made in the Loan Documents are true and correct on and as of this date; and (d) no Event of Default has occurred under any of the Loan Documents nor any event which with the giving of notice or the lapse of time, or both, would become an Event of Default.

Date: _____, 20___.

BORROWER:

**VINTRO HOTELS & RESORTS OHIO LLC,**
an Ohio limited liability company

By: _____
Name: _____
Title: _____

13168626